UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #:                               │
│ DATE FILED:  4/15/09                 │
└─────────────────────────────────────┘
```

WILLIAM F. RAEDLE,                      :

                     Plaintiff,         :        04 Civ. 2235 (TPG)

         - against -                    :        **OPINION**

CREDIT AGRICOLE INDOSUEZ and            :
LEE SHAIMAN,
                                        :
                     Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

This is an action by a former employee of Credit Agricole Indosuez ("CAI") against two of his former supervisors, Daniel H. Smith and Lee Shaiman. The case against defendant Smith was dismissed on motion, as were various claims against CAI and Shaiman.

Plaintiff was a research analyst at CAI from August 1998 until he was terminated in January 2001. Plaintiff subsequently sued, claiming that CAI breached certain agreements with him regarding his salary, bonus, and position. Also, he claimed that, following his termination, defendants CAI and Shaiman tortiously interfered with his prospective employment at another company.

The case went to trial before a jury on the above claims. The trial was held February 23 - February 27, 2009. The jury returned a verdict against plaintiff on all claims.

Plaintiff has moved for judgment as a matter of law or, in the alternative, for a new trial, on the tortious interference claim. The motion for judgment as a matter of law is denied. The motion for a new trial is granted.

The application for a new trial is made under Fed. R. Civ. P. 59(a)(1)(A). The rule does not specify the grounds for granting a new trial, but allows such a new trial to be granted for any reason heretofore applicable in a federal court action. It is well established that a new trial in a jury case may be granted if the verdict is against the weight of the evidence. However, a jury verdict is deemed to be against the weight of the evidence, for purposes of a Rule 59 motion, only if the verdict is seriously erroneous or a miscarriage of justice. Farrior v. Waterford Bd. of Educ., 277 F.3d 633, 634 (2d Cir. 2002). Unlike a situation where judgment as a matter of law is granted, a motion for a new trial may be granted even if there is substantial evidence supporting the jury's verdict. In dealing with such a new trial motion, a trial judge is free to weigh the evidence and is not compelled to view it in the light most favorable to the verdict winner. However, such a motion for a new trial should be granted only where the jury's verdict is "egregious," and a court should rarely disturb a jury's evaluation of a witness's credibility. DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d 124, 134 (2d Cir. 1998).

<u>The Evidence At Trial</u>

Plaintiff was terminated by CAI because his superiors found

deficiencies in his performance.  However, he had apparently performed well
before coming to CAI and soon after his termination at CAI, he had a very
favorable opportunity for employment at the Dreyfus Corporation.  Since
plaintiff was qualified for a position that Dreyfus needed to fill, and had a
generally good reputation, Dreyfus was ready to hire him.  Before the final
decision, the Human Resources Department at Dreyfus put in a call to the
Human Resources Department at CAI.  It was a policy at CAI (which CAI had,
along with numerous other similar firms) to respond to a call from a
prospective employer such as Dreyfus, with nothing more than the bare facts
about the employment (colloquially known as "name, rank, and serial
number"),  without giving an evaluation of performance.

When Dreyfus called CAI, Dreyfus was told that there was no
record that plaintiff had ever been employed by CAI.  However, Dreyfus made a
second call and plaintiff's employment with CAI was then confirmed.  However,
CAI did not merely give the usual bare bones employment facts, as required by
the company's policy, but instead, CAI's Human Resources Department
suggested that Dreyfus speak to plaintiff's former superiors.

The evidence spells out a detailed chain of events, which does not
need to be described in this opinion.  However, the evidence is conclusive that
someone at CAI communicated to Dreyfus something so damaging to plaintiff
that Dreyfus withdrew its offer to plaintiff, despite the fact that Dreyfus had

been very eager to hire plaintiff.

It is surely true that, despite CAI's policy against giving evaluations to prospective new employers, if someone at CAI had given an honest appraisal of plaintiff's performance, then there would be no liability on the part of CAI, even if the apprisal had been negative and had caused plaintiff to lose the opportunity at Dreyfus. But, if someone at CAI gave Dreyfus a false report about plaintiff with the sole purpose of injuring him, under established law, this would constitute tortious interference with plaintiff's prospective employment.

It is certain beyond any question that one or more employees of CAI said something to Dreyfus and what was said was of sufficient weight to cause Dreyfus to back off from hiring plaintiff. Yet no one at CAI admits or seems to recall saying anything to Dreyfus in the way of any kind of comment about plaintiff.

But this is not a situation where the person or persons who communicated with Dreyfus (as someone surely did) would have died or would be otherwise unavailable. This is not a situation where a person who spoke with Dreyfus could plausibly claim a complete loss of memory. The events in question occurred in 2001. The lawsuit was brought in 2004. CAI's relationship with plaintiff was not a trivial or incidental matter. Among other things, the mere bringing of this lawsuit would have apprised the people at CAI

that there was an issue about what transpired between CAI and Dreyfus. Moreover, Shaiman and other witnesses from CAI remembered very clearly many details about plaintiff, including conversations with him prior to his termination. It is impossible to believe that they would remember all of that, but genuinely forget that they conveyed something to Dreyfus of sufficient substance to deprive him of his prospective employment there.

An important witness, formerly with Dreyfus, testified - Gerald Thunelius. He was the person who was interested in hiring plaintiff. The deposition of Thunelius had been taken in August 2006. Thunelius testified then that he was given certain information about plaintiff by Mary Beth Leibig, a Dreyfus Human Resources executive. Thunelius testified in his deposition that Leibig said that she had communicated with plaintiff's former superior at CAI who said something that was enough to make Leibig want to rescind the offer to plaintiff. According to Thunelius's deposition, this sounded to Thunelius like things of a personal nature rather than about plaintiff's skill - things which to him seemed "like garbage." Thunelius regarded this development as a setback and asked Leibig for permission to communicate directly with plaintiff's former superior. Leibig agreed, and Thunelius made the call. In his deposition, Thunelius did not testify about the name of the superior, but stated that the person told him that everything that needed to be said had been relayed to Human Resources at Dreyfus.

In his trial testimony, Thunelius stated that Leibig had told him that her source at CAI said that plaintiff had "mental issues." Thunelius said he thought that Leibig may have used the word "psychopathic" to describe plaintiff based on the conversation with plaintiff's superior at CAI. At least, he thought that a psychopathic condition was what was indicated. He testified at the trial that he then spoke directly to plaintiff's superior at CAI, who said that plaintiff had a problem, that he had mental issues. Thunelius, however, could not remember the name of the superior.

The court has already noted in this opinion that no one from CAI testified about communicating any comments regarding plaintiff to Dreyfus, favorable or unfavorable. However, one former employee of CAI, Sriram Balakrishnan, did give testimony which, if believed, would show that Shaiman did speak to Dreyfus in a derogatory manner about plaintiff, and there is no reason at all to believe that this witness was less than credible. Balakrishnan testified that Shaiman was his superior at CAI and that, one day, after plaintiff had been terminated, he was going into Shaiman's office to talk about something, but Shaiman was on the telephone. Balakrishnan went back to his desk, and went into Shaiman's office 5 or 10 minutes later, at which time Shaiman was off the telephone. Shaiman told Balakrishnan that someone had just called regarding a possible job opportunity for plaintiff. Shaiman then stated that, after what Shaiman had told the person, Shaiman did not think

that plaintiff would get the job.  Balakrishnan's recollection is that Shaiman
stated that the inquiry was from Dreyfus.

Shaiman testified at trial that he has no memory of any
conversation with anyone at Dreyfus concerning plaintiff.

Mary Beth Leibig testified at trial, and denied receiving any
negative information about plaintiff which she passed onto Thunelius.  Her
testimony is that, at a certain point, she dropped out of any involvement with
plaintiff's situation, and that others in her office took over in a way that she
does not know.

Where does this leave the weight of the evidence?  As already
stated, it is a certainty that someone at CAI made a sufficiently damaging
communication to Dreyfus, so that Dreyfus drew back from its quite strong
desire to hire plaintiff for a very favorable position.  Only one witness has
testified as to what that communication was, and that is Thunelius.  His
testimony is that Liebig relayed to him that someone at Dreyfus had
characterized plaintiff as having mental problems to the degree of being
psychotic, after which Thunelius spoke directly to plaintiff's former superior
who repeated basically the same thing.  Balakrishnan's testimony would
indicate that the person at CAI who made this communication was Shaiman.
If such a description was made by CAI to Dreyfus, it was false.  No one
contends that plaintiff had mental problems of any kind.  Neither defendant

-8-

CAI nor defendant Shaiman contends that such a description of plaintiff would have had any truth to it.

It is true that there were differences between the testimony of Thunelius at the trial versus his testimony on deposition. His deposition testimony was to the effect that there was a negative description of plaintiff of a personal nature, which he thought was "garbage," but he was no more specific at the deposition. In his trial testimony Thunelius was specific, and stated that he was told that plaintiff had mental issues to the degree of being psychotic. It was surely within the jury's province to consider that there was a serious question about the credibility of Thunelius. However, Thunelius was the only witness to provide the slightest clue as to what was said by CAI to Dreyfus. And even his deposition testimony, while lacking in specifics, surely supported the idea that a superior of plaintiff at CAI had made a seriously disparaging comment about plaintiff. Moreover, the testimony of Thunelius finds corroboration in the testimony of Balakrishnan. Against the testimony of Thunelius and Balakrishnan must be weighed the total lack of explanation from the people who were really responsible for what happened - i.e., plaintiff's superiors at CAI, particularly Shaiman. The court simply does not credit this total denial, or total denial of any memory.

The court believes that the jury verdict against plaintiff was drastically wrong, and would result in a serious injustice if allowed the stand.

## Conclusion

Plaintiff's motion for judgment as a matter of law on the tortious

interference claim is denied.  The motion for a new trial on this issue is

granted.

SO ORDERED.

Dated:      New York, New York
            April 15, 2009

THOMAS P. GRIESA
U.S.D.J.