UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x

WILLIAM F. RAEDLE,

                Plaintiff,

    - against -

CREDIT AGRICOLE INDOSUEZ and LEE SHAIMAN,

                Defendants.

------------------------------------------------x

04 Civ. 2235 (TPG)

**OPINION**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/14/10

William Raedle brings this action against his former employer, Credit Agricole Indosuez ("CAI"), and his former supervisor, Lee Shaiman. Raedle was a research analyst at CAI from August 1998 until he was terminated in January 2001. Plaintiff subsequently sued, claiming that CAI breached certain agreements with him regarding his salary, bonus, and position and that, following his termination, defendants CAI and Shaiman tortiously interfered with his prospective employment at another company. The case went to trial before a jury on the above claims in February 2009. The jury returned a verdict against plaintiff on all claims. In April 2009, the court granted plaintiff's motion for a new trial on the tortious interference claim.

At the second trial, which was held before a jury from March 15 – March 19, 2010 and dealt with the tortious interference claim, the jury

1

found CAI and Shaiman liable. The jury awarded Raedle lost earnings in the amount of $1,023,922 and $600,000 for injury to his reputation, for a total of $1,623,922 in compensatory damages. The jury also awarded Raedle punitive damages in the amount of $200,000 against Shaiman and $600,000 against CAI.

After discussion with the court, defendants are moving for judgment as a matter of law to vacate the jury's award of punitive damages.

## THE TRIAL

For purposes of this opinion, there is no need to summarize the evidence presented. The parties are well aware of such evidence.

The jury received the following instruction on the tortious inference with prospective employment claim:

> In order to recover in this case, plaintiff Raedle has the burden of proof of establishing by a fair preponderance of the evidence each of the following elements:
>
> First, that the defendant you are considering knew of Raedle's potential employment at Dreyfus;
>
> Second, that such defendant engaged in certain conduct, the sole purposes of which was to interfere with Raedle obtaining the potential employment at Dreyfus, and did so by making misrepresentations about Raedle;
>
> Third, that were it not for the interference, Dreyfus would have hired Raedle as an employee; and
>
> Fourth, that Raedle suffered damages as a result of the interference

Trial Tr., dated March 19, 2010, at 639-40.

2

In conformity with the law, the punitive damages charge was articulated to the jury as follows:

> The purpose of punitive damages is, as the word indicates, to punish. The purpose of punitive damages is to punish a defendant for shocking conduct and to set an example in order to deter him and others from committing similar acts in the future. In order to award punitive damages, you must find circumstances of aggravation or outrage, such as spite or malice or other evil motive on the part of the defendant, and a conscious and deliberate disregard of the plaintiff's interests so that the conduct could be called willful or wanton. These are strong words, but that's what is necessary to be shown in order to obtain an award of punitive damages.

Trial Tr., dated March 19, 2010, at 651.

## DISCUSSION

Punitive damages are available in tort actions "where the defendant's wrongdoing has been intentional and deliberate, and has the character of outrage frequently associated with crime." Prozeralik v. Capital Cities Comm'ns, Inc., 82 N.Y.2d 466, 479 (1993) (quoting Prosser and Keeton, Torts § 2 at 9 (5th ed. 1984)).

> Something more than the mere commission of a tort is always required for punitive damages. There must be circumstances of aggravation or outrage, such as spite or 'malice,' or a fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that the contact may be called willful or wanton.

Id.

Courts in the Second Circuit have held that punitive damages are available in actions for tortious interference with prospective

3

employment[1] where the defendant's conduct is highly egregious and borders on the criminal. See Carvel Corp. v. Noonan, 350 F.3d 6, 24 (2d Cir. 2003); Purgess v. Sharrock, 33 F.3d 134, 142 (2d Cir. 1994).

Punitive Damages against Shaiman

There is a sharp distinction between the elements of liability for compensatory damages in a tortious interference case and the elements which can form the basis for a punitive damages award. This distinction is illustrated by the instructions given to the jury in the present case as well as the pronouncements in the judicial decisions.

Although the court submitted the issue of punitive damages to the jury, the court believes that there was no proper basis for the jury to make an award of such damages.

As to Shaiman, the evidence does not justify a finding of aggravation or highly egregious conduct.

Punitive Damages against CAI

Under New York law, punitive damages may be imposed on an employer for the intentional wrongdoing of its employees if there is sufficient proof that a "superior officer" or an individual employed in a managerial capacity participated in, authorized, consented to, or ratified the misconduct. See Loughry v. Lincoln First Bank, N.A., 67 N.Y.2d 369, 378 (1986). A "superior employee" does not simply inhabit "the executive

---

[1] This claim is often referred to interchangeably as "tortious interference with prospective economic advantage" or "tortious interference with prospective business relations."

4

suite or topmost reaches of corporate government." Id. at 380.  And while vested with some supervisory or decision-making responsibility, the term contemplates a high level of managerial authority in relation to the nature and operation of the employer's business such that "his participation in the wrongdoing renders the employer blameworthy, and arouses the institutional conscience for corrective action." Id. at 380-81; see also Tse v. UBS Fin. Servs., Inc., 568 F. Supp. 2d 274, 318 n.31 (S.D.N.Y. 2008) (finding a person a "superior officer" for agency purposes based on his supervision of several hundred employees and his ability to hire, fire, and promote people).

The punitive damages award of $600,000 against CAI cannot be sustained because what has been proven at trial does not meet this standard.  CAI neither directed nor ratified Shaiman's actions.  In fact, there is no evidence in the record that CAI was even aware of Shaiman's conduct vis-à-vis Raedle's prospective employment with Dreyfus.  And most critically, Shaiman's position was not sufficiently "superior" such that his actions bind CAI – although he was the Head of Research in the Asset Management Division within Indosuez Capital, he only had supervisory responsibility for fewer than ten employees and did not have the authority unilaterally to hire, fire, or promote anyone.  Accordingly, the punitive damages award against CAI is dismissed.

## CONCLUSION

Defendants' motion for judgment as a matter of law as to the punitive damages award is granted, and the punitive damages awards against Shaiman and CAI are vacated.

Dated: New York, New York
       April 14, 2010

SO ORDERED

Thomas P. Griesa
U.S.D.J.